1
2
3
4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   JASON CHRISTOPHER JIMENEZ           Case No.  25-cv-08427-TLT
    MOLINA,
8
            Plaintiff,                   **ORDER GRANTING TEMPORARY
9                                        RESTRAINING ORDER**
        v.
10                                       Re: Dkt. No. 9
    SERGIO ALBARRAN,
11
            Defendant.
12

13          Pending before the Court is Petitioner-Plaintiff Jimenez Molina's *Ex Parte* Motion for

14   Temporary Restraining Order.  ECF 7.  On October 2, 2025, Petitioner filed a Petition for Writ of

15   Habeas Corpus under 28 U.S.C. § 2241 alleging that he was detained without a notice or hearing

16   in violation of his Due Process rights under the Fifth Amendment.  ECF 1.  Petitioner-Plaintiff

17   requests that the Court enjoin Respondents, Department of Homeland Security (DHS), U.S.

18   Immigration and Customs Enforcement (ICE), and Pam Bondi, in her official capacity as the U.S.

19   Attorney General, (1) from continuing to detain him, (2) order his immediate release from

20   immigration detention; (3) from prohibit his re-arrest Petitioner until he is afforded a hearing

21   before a neutral decisionmaker and (4) enjoin Respondents from transferring him out of this

22   District or deporting him during the pendency of the underlying proceedings. ECF 7 at 5. For the

23   reasons stated below, the Court GRANTS Petitioner-Plaintiff Jimenez Molina's *Ex Parte Motion*

24   for Temporary Restraining Order.

25   **I.      BACKGROUND**

26          According to the record before the Court, Petitioner-Plaintiff entered the United States in

27   December of 2022.  ECF 7 at 6.  He is a native of Ecuador.  *Id.* at 1.  Petitioner-Plaintiff was

28   immediately detained crossing the border.  *Id.*  He remined in ICE custody in Texas for

United States District Court
Northern District of California

1    approximately three days.  *Id.*

2        Petitioner-Plaintiff was released on parole in the United States with instructions to report to

3    ICE in early 2023.  *Id.* at 1.  In January 2023, Petitioner-Plaintiff reported in-person to the ICE

4    office in San Francisco as instructed and was given a Notice to Appear for removal proceedings in

5    immigration court, charged with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien

6    present in the United States without being admitted or paroled."  *Id.* at 3.

7        Petitioner-Plaintiff has established a home in Santa Rosa where he lived with his wife and

8    three children and obtained work authorization to legally work in the United States and support his

9    family.  *Id.* at 3.  Petitioner-Plaintiff continued to show up for multiple check-ins as instructed

10   over the next few years.  *Id.* at 1.  While in the United States, Petitioner-Plaintiff timely filed a

11   Form I-589 (Application for Asylum and Withholding of Removal).  *Id.* at 3.  Petitioner and his

12   family began their individual hearing on the merits at the San Francisco Immigration Court on

13   February 12, 2025.  *Id.*  He has lived in liberty with his family in the United States since

14   December 2022.  *Id.*

15       In September 2025, after years of compliance with ICE's check-in requirements and

16   procedures, Petitioner-Plaintiff missed a single photograph check-in.  *Id.* at 1.  He later received a

17   call from ICE officials to appear at the ICE office in San Francisco on October 2, 2025.  *Id.*

18   Petitioner-Plaintiff arrived at the facility before his 8:00 a.m. appointment time, and, while waiting

19   for his appointment, was informed by an ICE officer that he was under arrest.  *Id.*  Petitioner-

20   Plaintiff was arrested and detained by ICE on October 2, 2025.  *Id.*  He has been in their custody

21   ever since.  *Id.*

22       On October 2, 2025, Petitioner-Plaintiff filed Petition for Writ of Habeas Corpus which

23   indicated Petitioner-Plaintiff's intent to file a motion for temporary restraining order.  ECF 1 ¶ 15.

24   October 17, 2025, Petitioner-Plaintiff's counsel spoke with Respondents' counsel via telephone,

25   where they briefly discussed the forthcoming motion.  ECF 7 at 2.  On October 20, 2025, this

26   motion was filed.  ECF 7.  The Court provided the Petitioner-Plaintiff's counsel as well as counsel

27   for Respondents of a copy of the Court's order at ECF 9 on October 20, 2025, at 11:06 p.m.

28       In the motion, Petitioner-Plaintiff contends that his arrest and detention violate the Due

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1  Process Clause of the Fifth Amendment, both substantively (because Respondents were required

2  to determine whether circumstances have materially changed such that his re-incarceration would

3  be justified based on clear and convincing evidence establishing that he is a danger to the

4  community or a flight risk) and procedurally (because he was not provided with a pre-detention

5  hearing).  ECF 7 at 4, 9.

6  **II.    LEGAL STANDARD**

7      The standard for issuing a temporary restraining order is identical to the standard for issuing a

8  preliminary injunction.  *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he

9  legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal

10  quotation marks and citation omitted)).  An injunction is a matter of equitable discretion and is "an

11  extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to

12  such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  And "a TRO

13  'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is

14  necessary to hold a [preliminary injunction] hearing and no longer.'"  *E. Bay Sanctuary Covenant v.*

15  *Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of*

16  *Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

17      A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed

18  on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3]

19  that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*,

20  555 U.S. at 20.  "[I]f a plaintiff can only show that there are serious questions going to the merits—a

21  lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue

22  if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are

23  satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation

24  marks and citations omitted).  "[W]hen the Government is the opposing party," the final two factors

25  "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

26      An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only

27  be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A

28  "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so

3

1    long as is necessary to hold a [preliminary injunction] hearing, and no longer" *E. Bay Sanctuary*

2    *Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of*

3    *Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III.    DISCUSSION

5    As a preliminary matter, the Court finds that the requirements for issuing a temporary

6    restraining order without notice pursuant to Federal Rule of Civil Procedure 65(b) are met.

7    Petitioner-Plaintiff's attorney has set our specific facts showing that immediate and irreparable

8    injury, loss, or damage may result before the adverse party can be heard in opposition and has

9    stated that counsel contacted the United States Attorney's Office for the Northern District of

10   California on October 17, 2025.  ECF 7 at 1–2.

11   Having found that the requirements of Federal Rule of Civil Procedure 65(b) are met, the

12   Court also finds that Plaintiff-Petitioner (A) has demonstrated that he will likely succeed on the

13   merits of his claim; (B) will likely to suffer irreparable harm in the absence of preliminary relief; and

14   (C) the balance of equities and the public's interest weigh in favor of granting relief.

### A.    Petitioner-Plaintiff will Likely Succeed on the Merits of his Claim

16   Petitioner-Plaintiff will likely succeed on the merits of his claim.  The protections of the

17   Constitution apply to all persons within the jurisdiction of the United States, including citizens and

18   non-citizens alike, and including those persons who are present in the United States without

19   authorization.  *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) (noting that "[a]liens, even aliens

20   whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed

21   due process of law by the Fifth and Fourteenth Amendments").  Under the Due Process Clause of

22   the Fifth Amendment to the United States Constitution, no person shall be "deprived of life,

23   liberty, or property, without due process of law."  U.S. Const. amend. V.

25   Petitioner has a substantial interest in remaining out of custody, and the Due Process

26   Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or

27   detention.  *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6

(N.D. Cal. July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases). "Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond." *Toeibio Felipe Castanon Domingo v. Kaiser*, 2025 WL 1940179, at *2 (N.D. Cal. July 14, 2025).

In *Morrissey v. Brewer*, the Supreme Court held that an individual whose parole is revoked—who, like Petitioner-Plaintiff, is re-detained after being released—has a "valuable" liberty interest notwithstanding the "indeterminate" nature of his freedom. 408 U.S. 471, 482 (1972). Such a noncitizen "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id*. The parolee's liberty therefore "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often others." *Id*.

The Court thus finds that the three factors relevant under the *Mathews v. Eldrige* test, "the private interest that will be affected by the official action," "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," weigh in favor of Petitioner-Plaintiff being immediately released from custody, and that he be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody. 424 U.S. at 335.

### B. Petitioner-Plaintiff will Likely Suffer Irreparable Harm in the Absence of Temporary Relief

Petitioner-Plaintiff likely faces irreparable injury and harm to liberty absent relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*,

695 F.3d 990, 1002 (9th Cir. 2012)). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried his burden as to irreparable harm." *Hernandez*, 872 F.3d at 995. As discussed above, Petitioner-Plaintiff has a constitutional liberty interest in freedom from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Civil detention, including that of a non-citizen, violates due process in the absence of a "special justification" sufficient to outweigh one's "'constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)) (internal quotation marks omitted). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up).

### C. The Balance of Equities and the Public Interest Weigh in Favor of Granting Relief

The final two *Winter* factors, the balance of the equities and public interest, merge and weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up) (internal quotations omitted). Petitioner-Plaintiff faces significant harm absent relief, while the harm to Respondents is minimal. *See Domingo*, 2025 WL 1940179, at *4 ("[T]he comparative harm potentially imposed on Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted."). Respondents, at most, face a short delay in detaining Petitioner-Plaintiff and is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below. This Order

United States District Court
Northern District of California

1     accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Alva*

2     *v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (granting

3     temporary restraining order); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D.

4     Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a

5     pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting

6     preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D.

7     Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854

8     (granting temporary restraining order requiring pre-detention hearing before re-detention of

9     noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3

10    (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing

11    before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-

12    4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

13           Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of

14    bond.  "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their]

15    conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Therefore, no security is

16    needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . .

17    hav[ing] been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

18    **IV.    CONCLUSION**

19           For the foregoing reasons, the **GRANTS** Petitioner-Plaintiff's *Ex Parte* Motion for

20    Temporary Restraining Order to preserve the status quo pending further briefing and a hearing on

21    this matter.

22           Respondents are ORDERED to immediately release Petitioner-Plaintiff Jimenez Molina

23    from custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner-Plaintiff

24    Jimenez Molina without notice and a pre-deprivation hearing before a neutral decisionmaker, and

25    from removing him/her from the United States.  This Order shall remain in effect until Monday,

26    November 3, 2025, at 5:00 p.m.

27           The Petition, *Ex Parte* Motion for Temporary Restraining Order, and this Order SHALL be

28    served on Respondents such that they receive actual notice as soon as practicable, and Petitioner-

United States District Court
Northern District of California

Plaintiff shall file <u>proof of such service by no later than October 21, 2025, at 5:00 p.m.</u>

Respondents shall provide a status report confirming Petitioner-Plaintiff's <u>release by October 22, 2025</u>, at 9:00 a.m.

Respondents are ORDERED TO SHOW CAUSE in-person at a hearing on <u>November 3, 2025</u>, at 10:00 a.m. why a preliminary injunction should not issue. Respondents shall file a response to Petitioner-Plaintiff's motion by no later than <u>October 28, 2025</u>. Any reply should be filed by <u>October 30, 2025.</u>

Petitioner-Plaintiff shall not be deported, removed, or otherwise transferred outside the United States until further Order of this Court.

This order corresponds with ECF 9.

IT IS SO ORDERED.

Dated: October 21, 2025

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

8