UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CHRISTOPHER JIMENEZ MOLINA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SERGIO ALBARRAN,<br><br>　　　　Defendant. | Case No.  25-cv-08427-TLT<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 7 |

On October 2, 2025, Petitioner-Plaintiff Jimenez Molina ("Petitioner-Plaintiff"), who is originally from Ecuador, waited in the rain outside the San Francisco ICE Field Office located at 630 Sansome Street, San Francisco, California. He had arrived at the ICE Field Office early that morning, in compliance with instruction from ICE. Shortly after he entered the building, he was detained and later transferred to an immigration detention center where he sat for two weeks.

Petitioner-Plaintiff filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 alleging that he was detained without a notice or hearing in violation of his Due Process rights under the Fifth Amendment. ECF 1. Petitioner-Plaintiff's application for temporary restraining order and motion for preliminary injunction was filed on almost three weeks later. ECF 7. Petitioner-Plaintiff's motion for preliminary injunction is now pending before the Court. ECF 7.

Having considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court **GRANTS** Plaintiff's motion for preliminary injunction.

I.   **BACKGROUND**

　　A.   **Procedural History**

On October 2, 2025, Petitoner-Plaintiff filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 alleging that he was detained without a notice or hearing in violation of his Due

Process rights under the Fifth Amendment.  ECF 1.

Subsequently, on October 20, 2025, Petitioner-Plaintiff filed a motion for temporary restraining order and order to show cause regarding why a preliminary injunction should not issue. ECF 7; ECF 13.[1]  In his application, Petitioner-Plaintiff requested that the Court enjoin Defendant, Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), and Pam Bondi, in her official capacity as the U.S. Attorney General, (1) from continuing to detain him, (2) order his immediate release from immigration detention; (3) from prohibit his re-arrest Petitioner-Plaintiff until he is afforded a hearing before a neutral decisionmaker and (4) enjoin Defendant from transferring him out of this District or deporting him during the pendency of the underlying proceedings.  ECF 7 at 5.

On the evening of October 20, 2025, the Court issued an order granting Petitioner-Plaintiff's motion for temporary restraining order.  ECF 8.  In the Court's order, Defendant were (1) ordered to immediately release Petitioner-Plaintiff from custody pending these proceedings, (2) enjoined from re-detaining Petitioner-Plaintiff absent a hearing before a neutral decisionmaker, (3) enjoined from deporting Petitioner-Plaintiff pending these habeas proceedings, and (4) abide by the briefing schedule on Petitioner-Plaintiff's preliminary injunction motion provided by the Court.  On October 21, 2025, the Court issued a full written order explaining its ruling on Petitioner-Plaintiff's motion for temporary restraining order.  ECF 10.

Pursuant to the briefing schedule in the Court's order at ECF 8, Defendant response to Petitioner-Plaintiff's motion for preliminary injunction was due on October 28, 2025, and Petitioner-Plaintiff's response was due October 30, 2025.  ECF 10.  Defendant filed a timely response.  ECF 18.  Petitioner-Plaintiff did not file a reply in support of his motion for preliminary injunction.

On October 31, 2025, the Court re-set the hearing on Petitioner-Plaintiff's motion for preliminary injunction to December 16, 2025.  ECF 22.  The Court held oral argument on

---

[1] Upon the Court's request, on October 22, 2025, Petitioner-Plaintiff explained that the relief sought in the motion filed at ECF 7 was intended as an application for temporary restraining order and order to show cause regarding a preliminary injunction despite Defendant's concern about ambiguity in the filing.

2

Plaintiff's motion on December 16, 2025.

During oral argument, Petitioner-Plaintiff clarified that he did not waive arguments regarding those issues raised in Defendant's opposition but omitted from Petitioner-Plaintiff's initial motion.  ECF 25.  On December 17, 2025, Petitioner-Plaintiff filed a supplemental brief, with the Court's leave, addressing those arguments which went unaddressed by Petitioner-Plaintiff's failure to file a reply.  ECF 26.

### B. Factual Background

According to the record before the Court, Petitioner-Plaintiff entered the United States in December of 2022.  ECF 18-1, Declaration of Jarvin Li ("Li Decl.") ¶ 5.  He is a native of Ecuador.  *Id.*  Petitioner-Plaintiff was immediately detained crossing the border.  *Id.* ¶ 6.

Petitioner-Plaintiff was released on parole in the United States under the Intensive Supervision Appearance Program ("ISAP") with instructions to report to ICE in early 2023.  *Id.* ¶ 7.  In March 2023, Petitioner-Plaintiff reported in-person to the ICE office in San Francisco as instructed and was given a Notice to Appear for removal proceedings in immigration court, charged with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled."  *Id.* ¶ 8.

Petitioner-Plaintiff has established a home in Santa Rosa where he lives with his wife and three children; he financially and emotionally supports his family.  ECF 7-2, Declaration of Yajaira Fernanda Tipan Guachamin ("Tipan Decl.") ¶¶ 1–9.  While in the United States, Petitioner-Plaintiff timely filed a Form I-589 (Application for Asylum and Withholding of Removal), which is still pending.  ECF 7 at 3.  Petitioner and his family began their individual hearing on the merits at the San Francisco Immigration Court on February 12, 2025.  *Id.*  He has lived in liberty with his family in the United States since December 2022.  *Id.*

In September 2025, after years of compliance with ICE's check-in requirements and procedures, Petitioner-Plaintiff missed a single photograph check-in.  ECF 7-1, Declaration of Francesca Borin ("Borin Decl.") ¶ 4.  On September 17, 2025, Defendant was made aware of Petitioner-Plaintiff's missed appointment.  Li Decl. ¶ 9.  Thereafter, ICE determined that Petitioner-Plaintiff was eligible for custody redetermination for failure to report or contact ICE

3

1  regarding the missed appointment. *Id.*

2  On October 1, 2025, Petitioner-Plaintiff received a call from ICE officials to appear at the
3  ICE office in San Francisco on October 2, 2025. *Id.* ¶ 10. Petitioner-Plaintiff arrived at the
4  facility before his 8:00 a.m. appointment time, and, while waiting for his appointment, was
5  informed by an ICE officer that he was under arrest. Borin Decl. ¶ 6. Petitioner-Plaintiff was
6  arrested and detained by ICE on October 2, 2025. *Id.*

7  On October 2, 2025, Petitioner-Plaintiff filed Petition for Writ of Habeas Corpus which
8  indicated Petitioner-Plaintiff's intent to file a motion for temporary restraining order. ECF 1 ¶ 15.
9  October 17, 2025, Petitioner-Plaintiff's counsel spoke with Defendant' counsel via telephone,
10 where they briefly discussed the forthcoming motion. ECF 7 at 2. On October 20, 2025, this
11 motion was filed. ECF 7. The Court provided the Petitioner-Plaintiff's counsel as well as counsel
12 for Defendant of a copy of the Court's order on Petitioner-Plaintiff's motion at ECF 9 on October
13 20, 2025, at 11:06 p.m.

14 In the motion, Petitioner-Plaintiff contends that his arrest and detention violate the Due
15 Process Clause of the Fifth Amendment, both and procedurally and substantively. ECF 7 at 4, 9.
16 Specifically, he avers that no evaluation was conducted to discern whether circumstances had
17 materially changed such that his re-incarceration would be justified based on clear and convincing
18 evidence establishing that he is a danger to the community or that he is a flight risk. Most
19 importantly, he was not provided with a pre-detention hearing. *Id*.

20 **II.     LEGAL STANDARD**

21     **A.     Preliminary Injunction**

22 The standard for issuing a temporary restraining order is identical to the standard for issuing a
23 preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he
24 legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal
25 quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an
26 extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to
27 such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO
28 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is

4

necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

### B.   Due Process Clause

The Due Process Clause of the Fifth Amendment to the United States Constitution states that "[n]o person shall… be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Once a protected liberty interest is identified, the Court determines what process is required by weighing the three *Mathews v. Eldridge* factors. 424 U.S. 319, 335 (1976). "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*.

## III. DISCUSSION OF IMMIGRATION STATUTES AND PROCESSES

### A. Detention Under 8 U.S.C. § 1226(a)

"Section 1226(a) sets out the default rule," and allows arrest and detention of a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).; 8 U.S.C. § 1226(a). "On a warrant issued by the Attorney General, [a] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General— (1) may continue to detain the arrested [noncitizen]; and (2) may release the [noncitizen] on— (A) bond of at least $1,500 . . . (B) conditional parole." 8 U.S.C. § 1226(a).

When a noncitizen is first apprehended under 8 U.S.C. § 1226(a), an ICE officer makes an initial custody determination. 8 C.F.R. § 236.1(c)(8). "The [noncitizen] will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8))

If a noncitizen is detained, they are entitled to a bond hearing before an Immigration Judge. *Jennings*, 583 U.S. at 306 (citing 8 CFR § 236.1(d)(1)). The Immigration Judge will order the noncitizen's release if the noncitizen "demonstrates by the preponderance of the evidence that he or she is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk[.]'" *Salcedo Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (quoting *Rodriguez Diaz*, 53 F.4th at 1197).

Under Section 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). But if it was previously determined that a noncitizen should be released on bond, "DHS may not re-arrest that noncitizen absent a change in circumstance." *Salcedo Aceros*, 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021)) (noting changed circumstance standard applies whether an immigration judge or ICE officer had previously released a noncitizen on bond).

Section 1226(c) "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)." *Jennings*, 583 U.S. at 289. Under § 1226(c), the Attorney General "shall take into custody" a noncitizen who "falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.*; 8 U.S.C. § 1226(c). Noncitizens detained under 8 U.S.C. § 1226(c) are not eligible for release on bond.

### B.  Detention Under 8 U.S.C. § 1225

Unlike Section 1226, which "applies to [noncitizens] already present in the United States," *Jennings*, 583 U.S. at 303, Section 1225 applies to "applicants for admission." *Rodriguez Diaz*, 53 F.4th at 1197 (Section 1225(b) "supplement[s] § 1226's detention scheme."). Section 1225 defines "applicant for admission" as "[a] [noncitizen] present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a] [noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a). Both Section 1225(b)(1) and Section 1225(b)(2) authorize detention for certain "applicant[s] for admission." 8 U.S.C. § 1225(b). 8 U.S.C. § 1225(b)(1) "applies to [noncitizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287.

Section 1225(b)(2) is a "catchall" provision that applies to most other "applicant[s] for admission." *Jennings*, 583 U.S. at 281. "[A] [noncitizen] who tries to enter the country illegally is treated as an 'applicant for admission,'" whereas "[a] [noncitizen] who is detained shortly after unlawful entry cannot be said to have 'effected an entry.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Noncitizens detained under 8 U.S.C. § 1225(b)(2) are subject to mandatory detention. 8 U.S.C. § 1225(b)(2)(A) ("[I]f the examining immigration officer determines that [a] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding.") (emphasis added).

Noncitizens under both subsections, 8 U.S.C. § 1225(b)(1) and (b)(2), are not eligible for bond hearings and may be released only on temporary, discretionary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). This parole "shall not be regarded as an admission," and "when the purposes of such parole . . . have been served the

7

[noncitizen] shall forthwith return or be returned to the custody from which he was paroled." *Id.*

## IV.   DISCUSSION OF MERITS OF PRELIMINARY INJUNCTION MOTION

Petitioner-Plaintiff argues that the Court should issue a preliminary injunction because (A) he is likely to succeed on the merits of his claim that the Due Process Clause entitles him to notice and a hearing before he is re-detained; (B) he is likely to suffer irreparable harm without relief; and (C) the balance of equities and the public interest favor granting a preliminary injunction. ECF 7 at 12, 19, 23, 25.  Defendant respond that Petitioner (A) is not likely to succeed on the merits of his claim because he is not entitled to a pre-detention, custody redetermination hearing before an immigration judge; (B) cannot establish he will be irreparably harmed if subject to detention; and (C) the government's interest in enforcing its immigration laws outweighs Petitioner's interest. ECF 18 at 1, 23.

### A.   Petitioner-Plaintiff Will Likely Succeed on the Merits of his Claim and Raises Serious Legal Questions

Petitioner-Plaintiff argues that the Due Process Clause prevents Defendant from re-arresting him without first providing a pre-deprivation hearing before a neutral adjudicator where the government demonstrates by clear and convincing evidence that there has been a material change in circumstances such that he is now a danger or a flight risk.  ECF 7 at 12.  Without such a showing made, Petitioner-Plaintiff argues, the government should be enjoined from re-incarcerating him.  *Id.*  Defendant argues that Petitioner cannot show a likelihood of success on his claim because Petitioner-Plaintiff is an "applicant for admissions" subject to a mandatory detention under §§ 1225(b)(1) and (b)(2).  ECF 18 at 1, 9.  Moreover, Defendant contends that even under the framework set forth in 8 U.S.C. § 1226(a), Petitioner-Plaintiff is not entitled to a pre-detention review by an immigration judge.  *Id.*

#### i.   Petitioner-Plaintiff is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225

The Court must first resolve whether Petitioner-Plaintiff is subject to mandatory detention under Section 1225 or 1226.  Defendant argues that Petitioner-Plaintiff "lack[s] a liberty interest in *additional* procedures including a custody redetermination or pre-detention bond hearing ... [because his] conditional parole status does not provide [him] with additional rights above and

8

1  beyond the specific process already provided by Congress in §1225," while the Petitioner-Plaintiff
2  undergoes removal proceedings. ECF 18 at 20 (emphasis in original). Petitioner-Plaintiff
3  responds that Defendant's interpretation of 8 U.S.C. § 1225(b)(2)(A) is inconsistent with
4  Congress's intent in enacting its amendment to 8 U.S.C. § 1226 in the Laken Riley Act. ECF 26
5  at 1.
6       The government's argument rests on a provision in 8 U.S.C. § 1225(b)(2)(A) which, in
7  relevant part, provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

11  8 U.S.C. § 1225(b)(2)(A).

12       The amendments in the Laken Riley Act found at 8 U.S.C. § 1226—which governs
13  discretionary detention—applied mandatory detention to noncitizens who (1) are inadmissible
14  because they are present without admission or parole, procured admission into the United States
15  because of misrepresentation, or lacked proper documentation; and (2) have been charged with,
16  convicted of, or arrested for certain enumerated crimes. *Salcedo Aceros*, 2025 WL 2637503, at
17  *10. Under Defendant's interpretation, however, those noncitizens are already subject to
18  mandatory detention under section 1225(b)(2). This reading is also consistent with *Yajure*
19  *Hurtado*'s interpretation of section 1225. 29 I & N Dec. 216, 222 (BIA 2025)

20       First, the BIA decision is entitled to little deference. *Loper Bright Enters. v. Raimondo*,
21  603 U.S. 369, 400 (2024) (observing that while "agencies have no special competence in resolving
22  statutory ambiguities," "[c]ourts do"). Under *Skidmore*, the "weight of such a judgment in a
23  particular case will depend upon the thoroughness evident in its consideration, the validity of its
24  reasoning, its consistency with earlier and later pronouncements, and all those factors which give
25  it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140
26  (1944). The Court joins the other courts in this district which have rejected the BIA's and
27  Defendant's interpretation of section 1225. *Bernal v. Albarran*, No. 25-cv-09772, 2025 WL
28  3281422, at *4 (N.D. Cal. Nov. 25, 2025); *Valencia Zapata v. Kaiser*, No. 25-cv-07492, 2025 WL

9

2741654, at *10 (N.D. Cal. Sept. 26, 2025); *Diaz v. Albarran*, No. 3:25-cv-09837, 2025 WL 3496686, at *3 (N.D. Cal. Dec. 5, 2025). Defendant's reading of section 1225 treats the phrases "applicant for admission" and "seeking admission" as synonymous, which renders the phrase "seeking admission" in section 1225(b)(2) unnecessarily redundant. *Salcedo Aceros*, 2025 WL 2637503, at *9. It would also render superfluous the recent Laken Riley Act amendments to section 1226(c).

As the court in *Bernal v. Albarran* found, this Court is convinced Defendant's reading of this provision is incongruent with the statutory scheme and legislative history the amendments to 8 U.S.C. § 1226. 2025 WL 3281422, at *4. Specifically, the Court finds that those noncitizens who are subject to mandatory detention under § 1225(b)(2)(A) cannot also be subject to detention under § 1226 without stripping Congress's amendment under the Laken Riley Act of any "real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Accordingly, the Court finds that Petitioner-Plaintiff is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

### ii. Petitioner-Plaintiff is not Subject to Mandatory Detention Under 8 U.S.C. § 1226

Petitioner-Plaintiff argues that even under the broad language of 8 U.S.C. § 1226, in practice, DHS is required to make a showing of changed circumstances—that is, show by clear and convincing evidence that there has been a material change in circumstances such that he is now danger or a flight risk—before re-arresting a noncitizen. ECF 7 at 12. Defendant argues that the government is permitted to re-arrest Petitioner-Plaintiff under § 1226 because that provision does not provide for pre-detention review, but instead rests that decision in the hands of ICE officers. ECF 18 at 1.

8 U.S.C. § 1226(a) "authorizes the [g]overnment to detain certain aliens already in the country pending the outcome of removal proceedings," *Jennings*, 583 U.S. at 289, but permits detention only if a noncitizen "pose[s] a danger to the safety of other persons or of property" or is not "likely to appear for any scheduled proceeding," 8 U.S.C. § 1226(a)(4). Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody

10

unless they pose a threat to the public or a flight risk. *Pablo Sequen v. Albarran*, No. 25-cv-06487, 2025 WL 2935630, at *7 (N.D. Cal. Oct. 15, 2025). *Bernal*, No. 25-cv-09772, 2025 WL 3281422, at *6 (noting that "detention is permitted under section 1226(a) only if [Petitioner-Plaintiff] is dangerous or a flight risk"). A showing that circumstances have changed such that Petitioner-Plaintiff does pose a danger to the public or a flight risk is required prior to Petitioner-Plaintiff's re-arrest. *Salcedo Aceros*, 2025 WL 2637503, at *1 ("DHS may not re-arrest that noncitizen absent a change in circumstance.") (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (noting changed circumstance standard applies whether an immigration judge or ICE officer had previously released a noncitizen on bond).

Defendant plainly has not met their burden of showing that there has been a change in circumstances such that Petitioner-Plaintiff's re-arrest is warranted. For more than two years, without incident, Petitioner-Plaintiff complied with ICE requests under the ISAP. ECF 7 at 1. After Petitioner-Plaintiff missed one check-in in September of 2025, he was asked to show up to the ICE office at 630 Sansome Street in San Francisc. Borin Decl. ¶ 9. Petitioner-Plaintiff complied immediately. *Id.* ¶ 3–6. The day after he was asked to report to the San Francisco ICE facility, he did. *Id.* Petitioner-Plaintiff has no criminal history. *Id.* ¶ 15. Defendant does not proffer evidence to dispute these facts. Under these circumstances, the Court finds that the government has fell short of demonstrating that Petitioner-Plaintiff is a flight risk or danger to the public.

Accordingly, Defendant may not justify re-arresting Petitioner-Plaintiff prior to a pre-detention hearing on the grounds that he is subject to detention under 8 U.S.C. § 1226.

### iii. Petitioner-Plaintiff Will Likely Succeed on His Procedural Due Process Claim

Petitioner-Plaintiff argues that due process mandates that he receive notice and a hearing before a neutral adjudicator prior to any re-arrest or revocation of his custody release. ECF 7 at 17. Defendant argues that Petitioner-Plaintiff is only entitled to the process custody redetermination proscribed by 8 U.S.C. § 1225, and not a pre-detention hearing as Petitioner-Plaintiff requests. ECF 18 at 20.

11

As a preliminary matter, it is well established that noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Mezei*, 345 U.S. at 212; see also Zadvydas, 533 U.S. at 693. No matter his pathway to this country, once Petitioner-Plaintiff began to establish roots in this country, he was entitled to due process of law by the United States Constitution. *Plyler v. Doe*, 457 U.S. 202, 210 (1982). Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections if the noncitizen is detained shortly thereafter, *Thuraissigiam*, 591 U.S. at 139–40, if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop ... ties" in this country, "h[er] constitutional status changes accordingly," and she "has a right to due process." *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982*); see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population").

Once a protected liberty interest is identified, the Court determines what process is required by weighing the three *Mathews v. Eldridge* factors. 424 U.S. 319, 335 (1976). "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. Thus, the issue before the Court is whether Petitioner-Plaintiff's liberty interest is weighty enough to require pre-deprivation notice and a hearing before a neutral adjudicator.

Petitioner-Plaintiff argues that (i) he has a weighty liberty interest in conditional release; (ii) the risk of erroneous deprivation without a pre-deprivation hearing is high; and (iii) Defendant' interest in detaining him without a pre-deprivation hearing is minimal. ECF 7 at 19, 22.

### a. Petitioner-Plaintiff has a Protected Liberty Interest in Conditional Release

Petitioner-Plaintiff argues that he has a liberty interest in continuing to exercise the

12

freedom that he has had in the United States since December 2022, when he was released as a parolee. ECF 7 at 14–15. Defendant argues that Petitioner-Plaintiff lacks a liberty interest in a custody redetermination or pre-detention bond hearing because his conditional parole status only entitles him to the process set out in § 1225. ECF 18 at 20.

It is well-established that parolees have a strong interest in their conditional release, *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972), and courts have held they cannot be re-arrested without a due process hearing in which they can challenge their re-incarceration. *Id.*; *United States v. Santana*, 526 F.3d 1257, 1259 (9th Cir. 2008); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010); *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017). The Court does not distinguish between citizens and noncitizens in this context. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal 2019) ("Just as people on pre-parole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."). Noncitizens have a right to due process. *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1056 (N.D. Cal 2021) ("The Court... declines to ignore the due process principles articulated in *Morrissey* on the basis that it was not decided in the immigration context.").

Petitioner-Plaintiff resides in Santa Rosa, California with his wife and three children. ECF 7 at 3. He is the primary financial support for his family and works full time in his community. Tipan Decl. ¶¶ 1, 4–8. He supports his children in their schooling and provides emotional support for his family. *Id.* ¶¶ 2–3. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (finding petitioner had a substantial interest "in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church."). If detained, Petitioner-Plaintiff would be unable to continue working, remain in his home, and support his family. Moreover, because Petitioner-Plaintiff's release was in the *civil*—not criminal—context, Petitioner-Plaintiff's liberty may not be diminished as a punishment. *See Zadvydas*, 533 U.S. at 690 (holding civil detention is nonpunitive); *see also U.S. v. Knights*, 534 U.S. 112, 119 (2001) (comparing probationers' reduced liberty with that of "law-abiding citizens"). Petitioner-Plaintiff's liberty interest on release under the ISAP is therefore at least as great as those serving

13

criminal sentences on parole. Indeed, "[e]ven parolees—for whom detention is the 'default,' who are subject to significant constraints on liberty, and who continuing to serve their criminal sentences for serious or violent felonies while released on parole—may not be detained and put back in prison without a court hearing within a few days." *Guillermo M. R. v. Kaiser*, No. 25-cv-05436, 2025 WL 1983677, at *1 (N.D. Cal. July 17, 2025).

Accordingly, the Court finds that Petitioner-Plaintiff has a protected liberty interest in his conditional release, and that, therefore, the first *Mathews* factor weighs in Petitioner-Plaintiff's favor.

### b. The Risk of Erroneous Deprivation Without Pre-Deprivation Process is High

Petitioner-Plaintiff argues that requiring a pre-deprivation hearing would decrease the significant risk of being erroneously deprived of his liberty by the government. ECF 7 at 22. Defendant argues that the process for detention proscribed by § 1225—which sets out procedures for review of detention by ICE officers—is a process which the Ninth Circuit has found ensures that the risk of erroneous deprivation of liberty is "relatively small." ECF 18 at 1.

Absent a pre-detention hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that Petitioners' re-detention will not be pursuant to a valid state interest. *See Aviles-Mena*, 2025 WL 2578215, at *5; *see also Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) ("[W]here ... the petitioner has not received any bond or custody redetermination hearing," "the risk of an erroneous deprivation of liberty is high.") That is because "neither Petitioner[s] nor Defendant had an opportunity to determine whether any valid basis exists for [their] detention." *Oliveros v. Kaiser*, No. 25-cv-07117, 2025 WL 2677125, at *7 (N.D. Cal. Sept. 18, 2025).

Despite the fact that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process," *Hernandez*, 872 F.3d at 981, Defendant maintains that Petitioner-Plaintiff is not entitled to a pre-detention hearing. ECF 18 at 1. And, even though the statutory protections of section 1226(a) require only a prompt post-deprivation hearing, the Court is doubtful that Petitioner-Plaintiff would receive even this process. *Id.* at 17

14

("Petitioner is not entitled to custody redetermination hearings at any time, whether pre- or post-detention."). Defendant' assertion that no justification for re-detention is needed is inconsistent with DHS practice, which has historically required a showing of changed circumstances when re-detention follows release by a DHS officer or IJ bond determination. *See Saravia*, 280 F. Supp. 3d at 1197, *aff'd sub nom. Saravia*, 905 F.3d 1137; *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) ("Thus, absent changed circumstances . . . ICE cannot redetain Panosyan."). At the very least, Defendant must justify why civil detention is warranted to prevent flight or protect against danger to the community. *Pinchi*, 2025 WL 2084921, at *5; *see Zadvydas*, 533 U.S. at 679. Again, the government's position is that no such showing is required before re-detaining Petitioner-Plaintiff gives the Court pause. The Court finds that high risk of erroneous deprivation in this case likely means that a pre-deprivation hearing is constitutionally necessary.

Accordingly, the Court finds that the second *Mathews* factor weighs in Petitioner-Plaintiff's favor.

### c. Defendant's Interest in Detaining Petitioner-Plaintiff Without a Hearing is Minimal

Finally, regarding the final *Mathews* factor, Petitioner-Plaintiff argues that the government's interest in detaining Petitioner-Plaintiff without a hearing required by due process is outweighed by Petitioner-Plaintiff's private interest in his liberty. ECF 7 at 19. Defendant argues that the government has a compelling interest in the enforcement of its immigration laws, and that Petitioner-Plaintiff lacks any interest in the pre-detention or custody redetermination hearing he requests. ECF 18 at 20, 23.

The government may have "a strong interest" in detaining noncitizens during the pendency of removal proceedings as needed to "protect[ ] the public from dangerous criminal aliens," or to prevent flight and thereby "increase the chance that ... the aliens will be successfully removed." *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 515 (2003)). However, the government must show that Petitioner-Plaintiff is a flight risk or a danger to the community for this Court to find Petitioner-Plaintiff's interest in remaining free is overcome. *Pablo Sequen v. Kaiser*, No. 25-cv-06487, 2025 WL 2650637, at *8 (N.D. Cal. Sept. 16, 2025).

15

Defendant interest in enforcing immigration laws does not justify Petitioner-Plaintiff's detention without a pre-detention hearing, as required to safeguard due process. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (finding the third *Mathews* factor favored petitioner, noting the government "has the power to take steps toward" re-arresting petitioner, but "its interest in doing so without a hearing is low"). Defendant has not demonstrated that the cost of providing a hearing would impose a financial or administrative burden. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh*, 2025 WL 1918679, at *8 (citing *Doe v. Becerra*, No. 2:25-cv-00647, 2025 WL 691664, at *2 (E.D. Cal. Mar. 3, 2025)); *see also Pinchi*, 2025 WL 2084921, at *6 ("[I]t is likely that the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a predetention hearing."). Instead, "[s]ociety's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required." *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).

Accordingly, the court finds that the third *Mathews* factor weighs in Petitioner-Plaintiff's favor.

\* \* \*

In conclusion, the Court finds that Petitioner-Plaintiff has shown a likelihood of success on the merits of his claim that he is entitled to a hearing before a neutral decisionmaker prior to any re-arrest or detention.

### B. Petitioner-Plaintiff Will Likely Suffer Irreparable Harm in the Absence of Temporary Relief

Petitioner-Plaintiff argues that without relief from this Court, he is likely to be subjected to unlawful re-detention and violation of his due process rights. ECF 7 at 24. Defendant argues that unlawful deprivation of physical liberty is inherent in detention and thus is not an irreparable injury. ECF 18 at 23

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "[I]t follows inexorably from

16

[the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried his burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.  Petitioner-Plaintiff is likely to suffer irreparable harm in the absence of preliminary injunctive relieve because, while Petitioner is currently out of ICE custody as a result of the Court's TRO order, there is no reason to believe that the government will refrain from re-detaining Petitioner absent injunctive relief from this Court.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Civil detention, including that of a non-citizen, violates due process in the absence of a "special justification" sufficient to outweigh one's "'constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)) (internal quotation marks omitted).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up).  Additionally, by the time any post-deprivation hearing is available, it will already be too late. *Jorge M.F.*, 534 F. Supp. 3d at 1055 ("[I]f Petitioner is detained, he will already have suffered the injury he is now seeking to avoid.").

In the absence of preliminary relief, Petitioner-Plaintiff is likely to suffer immediate and irreparable harm in the form of re-arrest and detention without due process. *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (finding irreparable injury where petitioner's children "depend upon him for support" and ISAP "did not respond to…inquiries regarding the purpose of the check-in").

**C.   The Balance of Equities and the Public Interest Weight in Favor of Granting Relief**

Petitioner-Plaintiff argues that the balance of equities strongly favors him because he faces irreparable injury, and the government cannot suffer harm from an injunction preventing it from engaging in unlawful conduct.  ECF 7 at 25.  Defendant argues that the government has a compelling interest in the steady enforcement of its immigration laws, and in ensuing noncitizens'

compliance with conditions of release. ECF 18 at 23–24.

The final two *Winter* factors, the balance of the equities and public interest, merge and weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up) (internal quotations omitted). Petitioner-Plaintiff faces significant harm absent relief, while the harm to Defendant is minimal. *See Domingo*, 2025 WL 1940179, at *4 ("[T]he comparative harm potentially imposed on Defendant is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted."). Defendant, at most, face a short delay in detaining Petitioner-Plaintiff and is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the preliminary injunction is granted. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Alva v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (granting temporary restraining order); *Pinchi*, 792 F. Supp. 3d at 1038 (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-647, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

For the foregoing reasons, the Court concludes that Petitioner-Plaintiff is likely to succeed on the merits of his claim that procedural due process entitles him to notice and a hearing before a

neutral adjudicator where the government bears the burden of showing that Petitioner-Plaintiff's re-detention is legally justified. Petitioner-Plaintiff is likely to suffer irreparable harm absent relief, and the balance of equities and public interest strongly favor issuing a preliminary injunction.

## V. CONCLUSION

The Court **GRANTS** Petitioner-Plaintiff's motion for a preliminary injunction for the pendency of these proceedings because Petitioner-Plaintiff has shown a likelihood of success on the merits of his claim that procedural due process entitles him to a pre-deprivation hearing, he is likely to suffer irreparable harm without relief, and the balance of equities and public interest weight strongly in favor of granting a preliminary injunction. Defendant is **ENJOINED AND RESTRAINED** from re-detaining Petitioner-Plaintiff Jimenez Molina without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing him from the United States.

This order resolves ECF 7.

IT IS SO ORDERED.

Dated: December 19, 2025

TRINA L. THOMPSON
United States District Judge